Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence AFFIRMS in part and MODIFIES in part the Opinion and Award of the deputy commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the deputy commissioner as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between plaintiff and defendant-employer.
3. GAB Business Services, Inc. was the compensation carrier on the risk.
4. Plaintiff's average weekly wage is as set forth on Industrial Commission Form 22.
5. Plaintiff alleges that he suffers from an occupational disease that was diagnosed on or about November 14, 1993, resulting in carpal tunnel syndrome to his left wrist.
6. Defendant-employer denied liability, and the issue to be determined by the Commission is whether plaintiff in fact suffers from an occupational disease which is compensable under the Workers' Compensation Act.
* * * * * * * * * * * * * *
The Full Commission adopts in part and modifies in part the findings of fact by the deputy commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff was sixty years old at the time of the hearing in this matter and was employed by defendant-employer as a truck driver. He was diagnosed with carpal tunnel syndrome and possible tendinitis in his left hand on November 15, 1993. His employment history was as a truck driver for twenty-four years. Prior to driving he was in the army for approximately twenty years during which time he had various duties as a member of the Special Forces.
2. Plaintiff began work with defendant-employer on April 1, 1987. He ended his employment with the company on January 9, 1994. Prior to leaving, he was out of work from November 15, 1993 to January 9, 1994 with symptoms including numbness in his thumb and being unable to hold a steering wheel. When he finally went to the doctor on November 15, 1993 his hand was swollen. He was seen by Dr. Rabir Singh.
3. Dr. Singh examined plaintiff for complaints of left wrist pain and numbness. Plaintiff reported that he had been suffering from pain and numbness for about six months and had recently experienced sharp pain extending into his wrist and fingers. The doctor diagnosed carpal tunnel syndrome and possible tendinitis.
4. Plaintiff then saw Dr. Walha for nerve conduction tests which confirmed the carpal tunnel syndrome diagnosis. He returned to Dr. Singh on November 22, 1993 and was told that he needed surgery. The doctor noted that there was a question regarding the etiology of plaintiff's condition. Dr. Singh noted in his records that plaintiff had to lift and drag furniture as part of his job and that he felt that this type of maneuvering was a major contributing factor to plaintiff's carpal tunnel syndrome.
5. Plaintiff's driving trips ranged between 120 and 4000 miles with the average trip being 1050 miles. He handled loads containing between 70 to 160 pads of furniture with the average weight of the load being 8000 to 8500 pounds. The furniture was always loaded for him at his origination point, and plaintiff sometimes unloaded or participated in unloading at his destination. Plaintiff estimated that he unloaded or participated in unloading approximately 2 to 3 times per week.
6. Regarding his medical history, a medical report dated October 20, 1987 from Dr. John F. Benson to Dr. Kenneth Gobel indicated that plaintiff reported numerous complaints of aching in his neck, shoulders, back and knees in 1987. He also had limitation of the cervical spine and left shoulder at that time. His numerous complaints of myalgia were noted to possibly be related to plaintiff's poor oxygenation, as he was a heavy smoker at that time. Records of Dr. LeBauer's treatment of plaintiff in 1986 at Moses Cone Hospital notes that plaintiff's past medical history was significant for arthritis of the shoulder.
7. Dr. Sam Moon at Duke University Medical Center saw plaintiff for his current condition on August 16, 1994. Pursuant to his examination and further tests including an EMG and a nerve conduction velocity test, Dr. Moon noted that plaintiff's studies were indicative of diffuse or multifocal neuropathy which appeared to be demyelinating in nature. Various abnormalities including problems with both median nerves were found, with the left median neuropathy being consistent with carpal tunnel syndrome. The doctor indicated that the condition was likely due to some systemic neuropathy as opposed to an actual compression in the carpal tunnel.
8. There is conflicting evidence regarding whether plaintiff's job caused carpal tunnel syndrome. Dr. Singh opined that plaintiff's work as a truck driver was a major "contributing factor" to his carpal tunnel syndrome. Dr. Moon, however, performed more extensive tests and examinations of plaintiff. In his initial analysis, he noted that while plaintiff's work activities could theoretically contribute to the manifestation of carpal tunnel syndrome, he could not definitively say whether plaintiff developed carpal tunnel syndrome due to his job. Dr. Moon observed that plaintiff performed too little furniture moving for that activity to be considered a cause of carpal tunnel syndrome and, assuming it was a potential cause, it would be difficult to explain why plaintiff had not contracted carpal tunnel syndrome in his dominant hand. Dr. Moon further noted that he did not know whether plaintiff developed carpal tunnel syndrome due to causes outside of the employment which was then aggravated by his job duties or whether plaintiff's job duties actually caused the carpal tunnel syndrome.
9. There is no conflicting evidence on the issue of increased risk in this case. Dr. Singh provided no opinion on this point. Dr. Moon stated in his medical report that he could not find any evidence that plaintiff's job as a truck driver is associated with an increased risk of carpal tunnel syndrome above the risk associated with the general public. Following additional testing, he further concluded that his suspicions regarding more diffuse neuropathy suggesting an enhanced susceptibility to a manifestation of carpal tunnel syndrome would support his conclusion regarding the absence of increased risk with plaintiff's job.
10. Although there is some evidence that plaintiff's carpal tunnel syndrome could be causally related to plaintiff's job, plaintiff has not proven the his job placed him at a greater risk of contracting carpal tunnel syndrome than the public in general. Thus, plaintiff has failed to prove that he suffers from a compensable occupational disease.
* * * * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. Carpal tunnel syndrome is not a specifically enumerated occupational disease under North Carolina General Statute § 97-53. Therefore, in order for a disease to be considered an occupational disease under N.C.G.S. § 97-53(13), the disease must be due to causes and conditions characteristic of and peculiar to the claimant's employment and not an ordinary disease of life to which the public is equally exposed outside of the employment. In addition, there must be a causal connection between the claimant's disease and the claimant's employment. Hansel v. ShermanTextiles, 304 N.C. 44, 283 S.E.2d 101 (1981). It is therefore plaintiff's burden to prove by the greater weight of the evidence that his employment was a significant causal factor in the development of his carpal tunnel syndrome and that it exposed plaintiff to a greater risk of contracting the disease than the public in general.
2. Since carpal tunnel syndrome is not characteristic of or peculiar to the trade or business of driving a truck and the evidence did not suggest plaintiff was at an increased risk of contracting carpal tunnel from driving a truck as compared to the general public, plaintiff has not proven by the greater weight of the evidence that his carpal tunnel syndrome is compensable as an occupational disease.
* * * * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following
ORDER
1. Plaintiff's claim for workers, compensation benefits is hereby DENIED.
2. Defendants shall pay the cost.
 S/ _______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________________ J. HOWARD BUNN CHAIRMAN
S/ _________________________ THOMAS J. BOLCH COMMISSIONER
BSB:be